[No. 14972. Department One. May 12, 1919.]

BLANCH CRAMER, *Respondent,* v. WILLIAM CRAMER
et al., *Appellants.*[1]

TRIAL (106-1)—INSTRUCTIONS TO JURY—EXCEPTIONS. Rem. Code,
§ 339, as to the manner of taking exceptions to instructions applies
also to the exceptions to refusals to give instructions.

HUSBAND AND WIFE (122) — ALIENATING — INSTRUCTIONS. In an
action against a husband's parents for alienating his affections, de-
fendants are entitled to an instruction to the effect that they had
a right to advise their son in his domestic affairs and that a clear
case of want of justification must be shown.

SAME (120)—ALIENATING—EVIDENCE. In an action against the
husband's parents for alienating his affections, the wealth of the
defendants is admissible only as affecting the mind of the husband
and as tending to influence his action.

SAME (120)—ALIENATING—EVIDENCE. In an action for alienating
a husband's affections, the fact that plaintiff had lately refused to
live with her husband would not defeat the action.

TRIAL (136) — VERDICT — SPECIAL INTERROGATORIES — DISCRETION.
The refusal to submit special interrogatories to a jury will not be
reviewed except for abuse of discretion.

CHADWICK, C. J., dissents.

Appeal from a judgment of the superior court for
Spokane county, Blake, J., entered April 12, 1918,
upon the verdict of a jury rendered in favor of the
plaintiff, in an action for alienation of affections. Re-
versed.

*J. S. McDonald, C. T. McDonald,* and *Del Cary
Smith,* for appellants.

*Crandell, Williams & Crandell,* for respondent.

MITCHELL, J.—Respondent has been divorced at the
suit of her former husband, Miles Cramer, on the
ground of abandonment, since the present action was

[1]Reported in 180 Pac. 915.

commenced by her to recover damages from appellants for alienating the affections of her husband. Appellants are husband and wife and parents of Miles Cramer. The cause was tried by the court and a jury, resulting in a verdict and judgment in favor of respondent, from which this appeal is prosecuted.

A number of errors are assigned that are grouped into five points, as follows:

I. The refusal of the court to give a requested instruction. In writing, appellants requested an instruction to the effect that parents have the right, in a moderate, intelligent, and careful manner, to advise a son as to his domestic affairs, even as to his living with his wife, and that, if given in good faith and from worthy motives, the wife may not complain even though the advice contribute in some degree to the result of causing a separation. Continuing, the requested instruction called attention to the distinction between the case of a stranger to the blood and that of parents, to the effect that, in the latter, conduct and advice are presumed to be good, and a clear case of want of justification must be shown before parents can be held responsible. The court gave the first part of the requested instruction, but refused the latter portion. Appellants at that time took an exception in writing to the refusal to give the requested instruction; and this court held in the case of *Radburn v. Fir Tree Lumber Co.*, 83 Wash. 643, 145 Pac. 632, that the last sentence in Rem. Code, § 339, as to the manner of taking exceptions to instructions given is equally applicable to the refusal of the court to give requested instructions. We think the refusal of the requested instruction was reversible error. Although disputed, there was substantial evidence to show appellants had, in various ways, attempted to counsel and advise their

son against respondent's relations with him, including threats to him of disinheritance and frequent efforts to keep him at their home and away from respondent.

It is not enough to advise the jury simply that their belief in the good faith of the parents is sufficient to warrant a verdict in their favor. When requested, the jury should be directed how to proceed in determining their good faith or lack of it. If there is a presumption in favor of good faith carrying its companion of a burden imposed upon him who assails it—and there is—it is important the jury should be so instructed. The appellants had a right to a direct and positive instruction upon this matter. The reason of the rule of good faith spoken of exacts the presumption which exists. In the case of *Stanley v. Stanley*, 27 Wash. 570, 68 Pac. 187, this court said:

"There is a wide distinction between an action by husband or wife against the parent of either and one against some stranger, who invades the domestic circle and separates husband and wife."

The court quotes with approval from *Tucker v. Tucker*, 74 Miss. 93, 19 South. 955, 32 L. R. A. 623, as follows:

" 'In every suit of this character the principal inquiry is, from what motive did the father act? Was it malicious, or was it inspired by a proper parental regard for the welfare and happiness of his child? The instinct and conscience unite to impose upon every parent the duty of watching over, caring for, and counseling and advising the child at every period of life, upon marriage and after marriage, whenever the necessities of the child's situation require or justify such action on the parent's part. The reciprocal obligations of parent and child last through life, and the duty of discharging these divinely implanted obligations is not and cannot be destroyed by the child's marriage. . . . The question always must be, was

the father moved by malice, or was he moved by proper parental motives for the welfare and happiness of his child?'"

1 Cooley on Torts (3d ed.), page 468, says:

"A *clear case* of want of justification may be justly required to be shown before they should be held responsible."

That the burden of proof is heavier in this kind of action than some other kinds of civil actions, see *Brison v. McKellop,* 41 Okl. 374, 138 Pac. 154; *Hossfeld v. Hossfeld,* 188 Fed. 61.

The supreme court of Iowa, in the case of *Busenbark v. Busenbark,* 150 Iowa 7, 129 N. W. 332, says:

"The law is tender of the parental relationship. The parent has the liberty of extreme solicitude for the welfare of the child even after marriage, and may advise freely and frequently and even foolishly. *His good faith will be presumed until the contrary is made to appear. Corrick v. Dunham,* 147 Iowa 320; *Heisler v. Heisler* (Iowa), 127 N. W. 823, and authorities cited therein."

The case of *Cornelius v. Cornelius,* 233 Mo. 1, 135 S. W. 65, was one in which a woman sued her father-in-law for the alienation of her husband's affections. The opinion sets out an instruction requested by the defendant including the subject of the presumption of good faith, which was refused, and also sets out the one given in its stead which omitted all reference to the presumption of good faith, concerning which the supreme court then said:

"If defendant was entitled to the presumption of good faith, as he was, its existence should not have been left to be felt out and inferred by way of implication and argument by the jury, but it should have been boldly and plainly declared." *Miller v. Miller,* 154 Iowa 344, 134 N. W. 1058.

II. It is next contended there was no alienation of affections shown. This is a challenge to the sufficiency of the evidence and carries a waiver of appellants' evidence. Contradictions are for the jury. An examination of the evidence satisfies us the case was one for the jury.

III. Over objections, respondent was permitted to show the wealth of appellants. They asked, and as presented by them the court refused to give, an instruction to the jury that the wealth of appellants should not be taken into consideration in determining the amount of recovery if the verdict should be for respondent. But, the jury was clearly, positively and properly instructed on the subject and the purpose of admitting the testimony, as follows:

"In the event of your finding the issues in this case in favor of the plaintiff, then in the matter of assessing damages, if any, which you may believe from the evidence the plaintiff sustained, you should not take into consideration any testimony offered and received showing the amount of the wealth of the defendants. Testimony concerning the wealth of the defendants was offered and received only as affecting the mind of Miles Cramer and as tending to influence him in his action, if you find he was influenced, toward the plaintiff, and for no other purpose, and beyond considering such testimony for that purpose, such testimony must not be considered by you."

See, also, 13 R. C. L., page 1479, § 528; *Price v. Price,* 91 Iowa 693, 60 N. W. 202, 51 Am. St. 360, 29 L. R. A. 150.

IV. Appellants requested, and the court refused, an instruction for the determination if respondent had not abandoned her husband, and if so that she would not be entitled to recover in this action. The refusal was right. If it was true that respondent had lately declined to live with her husband, it would not neces-

sarily be inconsistent with the fact that the husband's affections had been alienated from her by appellants. To the extent that an estrangement and living apart of respondent from her husband were shown, so far as its influence upon the case was concerned, the jury was properly advised in other general instructions given.

V. Finally, error is predicated upon the refusal of the court to submit to the jury certain special interrogatories proposed by the appellants. This was a matter resting in the discretion of the court and its ruling thereon will not be reviewed except for manifest abuse of such discretion, which does not appear in this instance. *Loy v. Northern Pac. R. Co.,* 68 Wash. 33, 122 Pac. 372; *Sudden & Christenson v. Morse,* 55 Wash. 372, 104 Pac. 645.

As appellants were not allowed an instruction upon the presumption of good faith they were cut off from a clear legal right for which cause the judgment is reversed.

TOLMAN, MACKINTOSH, and MAIN, JJ., concur.

CHADWICK, C. J. (dissenting)—I am of the opinion that there was no showing of the alienation of the affections of the husband of the respondent. On the contrary, her own testimony would be sufficient, if this were a divorce case, to sustain a finding of willful abandonment. I think the case should have been reversed and dismissed; but, being overruled by my associates, I concur in the result.