LEONARD AND HARRAL PACKING COMPANY, Appellant,

v.

Randall HAHN et al., Appellees.

No. 15949.

Court of Civil Appeals of Texas, San Antonio.

July 31, 1978.

Rehearing Denied Sept. 26, 1978.

202

R. H. Mercer, Richard G. Strong, San Antonio, for appellant.

Robert B. Thornton, Robert R. Biechlin, Jr., Ronald S. Schmidt, Moursund, Ball & Young, Edward P. Fahey, Groce, Locke & Hebdon, San Antonio, for appellees.

MURRAY, Justice.

This is a statutory wrongful death action brought by Randall Hahn against Leonard and Harral Packing Company, and Sears Roebuck & Company. Hahn alleges that negligence of the driver of L & H's truck caused its collision with a vehicle driven by his wife, Wanda Ruth Hahn, and thus caused her death. He also alleges that negligence of Sears in connection with inspection of the tire on the truck caused the collision and that Sears was liable as vendor of a defective tire.

L & H brought a third party action against Sears, as vendor, and Kelly-Springfield Tire Company, as manufacturer, of a defective tire which blew out while on the left front wheel of L & H's tractor, causing the driver to lose control of the tractor and trailer. This action was brought under negligence, breach of warranty and strict liability in tort for damages to the tractor and trailer and for indemnity and contribution on any judgment rendered against L & H to Hahn.

The case was submitted to the jury on special issues which found L & H's driver guilty of various acts of negligence, which were a proximate cause of the accident in question, and that the tire in question was not defective at the time it was sold. The jury awarded Hahn $225,000 for the pecuniary loss resulting from the death of his wife and $1,298.50 for funeral and burial expenses. The trial court entered judgment awarding Hahn actual damages against L & H and denied any recovery against Sears.

L & H has perfected appeal to this court and by its Points of Error Nos. 1 and 2 asserts improper jury argument by counsel for Hahn and that the judgment is excessive.

In connection with the jury argument, no objection was made on behalf of L & H.

■ It would be impossible for an attorney to argue the damages of a case such as this one without touching the natural feeling of sympathy for the husband that the jury might have due to this tragic accident. The undisputed facts are that a young wife was killed after three and a half months of marriage. The attorney's reference to the marriage vows and his use of song titles, such as "Just Me and My Shadow" and "Little Things Mean a Lot," and other such phrases, were not of such a character as would require reversal under any circumstances. We hold that the remarks were not so plainly prejudicial to L & H as to demand that the verdict be set aside, in the absence of an objection by its counsel at the time the words were spoken. In a case such as this, attorney for the plaintiff could not be expected to be apathetic nor could he be required to present his client's case to the jury in a stoic manner. *Turner v. Turner,* 385 S.W.2d 230 (Tex.1964); *Ramirez v. Acker,* 134 Tex. 647, 138 S.W.2d 1054 (1940). In *Ramirez,* the Supreme Court stated, at page 1056:

> It is not the purpose of the rules announced by this court to unreasonably limit counsel in discussing the facts and issues raised by the evidence. Great latitude must be allowed in this regard. Counsel ofttimes in their zeal in their arguments to the jury make statements the effect of which can be controlled by the court's telling counsel to desist making same and by instructing the jury to disregard same.

And in *Turner,* the Supreme Court said, 385 S.W.2d at page 237:

We must presume that the trial judge, on proper objection being made, had he considered the argument unfair or vicious would have sustained objections and given appropriate instructions to the jury to disregard the same.

Argument which could be properly cured by objection by opposing counsel and instruction [is] by the trial judge is not reversible error in the absence of such objection. Unless the argument is incurable, a litigant will not be permitted to lie in wait, taking a chance on a favorable verdict, and, being disappointed, complain for the first time of improper argument in a motion for new trial.

We, therefore, overrule this point of error urged by L & H.

L & H's Point of Error No. Two is as follows:

The Trial Court erred in granting judgment against the defendant Leonard and Harral Packing Company in the sum of $226,298.50 because that judgment is excessive.

■ This point only raises the issue of either legal sufficiency of the evidence or the point of no evidence. *McDonald v. New York Central Mutual Fire Insurance Company,* 380 S.W.2d 545 (Tex.1964); Calvert, 38 Texas L.Rev. 361 (1960). In *McDonald,* the Supreme Court said, at page 548:

The points do not seek relief from the jury findings on the ground that they are not supported by sufficient evidence or that they are against the great weight of the evidence, but relate only to the type of judgment that the Court entered. They are not applicable to the granting of a new trial after the entry of a judgment. We therefore hold that the points in the Court of Civil Appeals above referred to only raise[d] the legal sufficiency of the evidence or the point of no evidence.

■ Damages in cases of this nature cannot be proved with a certainty and accuracy as in other cases and the jury must necessarily be vested with considerable discretion and latitude in fixing damages. *Continental Bus System, Inc. v. Toombs,* 325 S.W.2d 153 (Tex.Civ.App.—Fort Worth 1959, writ ref'd n. r. e.). The amount of damages may not be determined alone by what judges of trial courts or reviewing courts would have awarded had they been sitting as triers of the fact. It is not the function of the court of civil appeals to substitute its opinion for the verdict of the jury on the amount of recovery, nor to disturb it in the absence of a showing that a jury was influenced by passion, prejudice, or some other improper motive. *Armstrong Tire & Rubber Company v. Shearer,* 290 S.W.2d 294 (Tex.Civ.App.—San Antonio 1956, writ ref'd n. r. e.).

At the time of decedent's death she was 28 years of age and had had two years of college. Prior to the marriage to Hahn, the decedent had worked at a country club making $2.75 per hour and for two or three weeks before her death she was delivering papers for the San Antonio Light with the help of her husband.

Hahn, who was three years younger than his wife, testified at length concerning the quality of the relationship with his deceased wife and her services around the house, her availability for daily consultation and comfort, her care and support, and her invaluable advice and direction in family matters.

■ We have reviewed the evidence in this case, including the testimony of plaintiff's witness, John Schieren, a Doctor of Economics and Professor in the School of Business at Texas Christian University, and although the verdict of the jury was high, we cannot say that the award exceeded reasonable compensation in this case. Appellant's Point of Error No. Two is overruled.

Appellant next complains of the action of the trial court in refusing to submit its requested Issue No. 1 with its accompanying definitions. Requested Issue No. 1 is as follows:

Do you find from a preponderance of the evidence that the tire on the left front wheel of Leonard and Harral Packing Company's truck No. 118, as manufactured by Kelly-Springfield Tire Company,

at the time the tire was sold to Leonard and Harral Packing Company was in a defective condition?

By the term "defective condition" as used in this charge is meant a tire so manufactured or sold that it would create an unreasonable risk of harm.

This was followed by a correct definition of "unreasonable risk of harm."

The following issue was submitted by the trial court and answered by the jury.

Special Issue No. 9: Do you find . . was in a defective condition at the time the tire was sold to Leonard and Harral Packing Company?

"Defective condition" means that the product is not safe for normal use.

Answer:  We do not

If you have answered Issue No. 9 "We do" then answer Issue No. 10; otherwise, do not answer Issue No. 10.

Special Issue No. 10: Do you find from a preponderance of the evidence that such defective condition made such tire unreasonably dangerous?

"Unreasonably dangerous" means that the product is dangerous to an extent beyond that which would be contemplated by the consumer, with the ordinary knowledge common to the community as to its characteristics.

Answer: ⸺

Restatement (Second) of Torts, § 402(a) (1965), is as follows:

One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused  . . . .

■ While it is true that the requested issue embraces the elements of this section, it is equally true that issues submitted by the court (9 and 10), embrace the elements of this section.  Section 402(a) requires that the product be in a defective condition and that it be unreasonably dangerous and although either submission would be correct, we believe that the Texas Rules of Civil Procedure, Rule 277, permits the court to submit the issue of defective condition and unreasonably dangerous in separate issues.

■ The jury was given a fair and adequate opportunity to determine whether the tire was defective and whether such defect rendered the tire unreasonably dangerous. The trial court properly refused to submit the requested issue which was but a different phase or shade of the same issue. *Smith & Conklin Bros. v. Griffith,* 153 Tex. 341, 268 S.W.2d 124 (1954); Tex.R.Civ.P. 279 (1978).  L & H's Point of Error No. Three is overruled.

■ The next three points of error of L & H complain of the action of the trial court in granting judgment that L & H recover nothing from Kelly-Springfield Tire Company and Sears because (1) there is no evidence to support the answer of the jury to Special Issue No. 9; (2) because there is insufficient evidence to support the answer of the jury to Special Issue No. 9, and (3) the answer to Special Issue No. 9 is contrary to the overwhelming preponderance of the evidence as to be manifestly unjust. These points of error are clearly "no evidence" points and, as the burden of proof on Special Issue No. 9 was on L & H, can only be treated as points raising the issue that as a matter of law the defective tire was established by the evidence. *McDonald, supra;* Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361 (1960).  L & H has filed a motion for leave to file a post-submission brief raising the point "against the great weight and preponderance of the evidence." We have denied this motion.  Tex.R.Civ.P. 418, prescribes that such brief shall contain a statement of points upon which the appeal is predicated.  Although the briefing rules are to be liberally construed, they should not be so liberalized or extended so as to permit additional points after submission of an appeal in the absence of most extraordinary circumstances.

■ The Statement of Facts in this case is well over 1,000 pages.  L & H's expert witnesses, Mr. Doyle and Dr. Mosier, testified that in their opinion there was a defect in the tire at the time of manufacture.

Sears' expert witnesses, Mr. Hill and Mr. Kessle, testified that in their opinion there was no defect in the tire at the time of sale. There was considerable dispute between these experts as to whether the tire blew out because of a defect or because the tire was run with low pressure. The jury, being the final arbiter of facts in the case, simply determined that the proponents to Special Issue No. 9 had not met their burden of proving that the tire in question was defective at the time of manufacture. It is common knowledge that sometimes tires blow out for reasons other than defects. The case cited by Hahn, *Darryl v. Ford Motor Company,* 440 S.W.2d 630 (Tex.1969), is not in point. In *Darryl,* the jury found that the braking system of the car was defective. The Court of Civil Appeals, 432 S.W.2d 569, held there was no evidence of defect and reversed and rendered. The Supreme Court said, at page 631:

> Writ of error was granted on petitioners' first point, which complains of the Court of Civil Appeals['] holding that there was no evidence to support the finding of the jury that the defective condition of the push rod existed at the time when it was sold by Ford Motor Company.

> We hold that there was some evidence to support the submission of the following issues and to. support the jury's answers thereto:

> \*    \*    \*    \*    \*    \*

> The evidence conclusively shows that the push rod bent either when Voyles applied the brakes in order to avoid the collision or as a result of the collision.

> \*    \*    \*    \*    \*    \*

> It cannot be seriously contended that a push rod that will bend to such an extent that it will not activate the braking system is not 'unreasonably dangerous'.

The Supreme Court held that there was no other explanation in the record for the cause of the accident other than the defective push rod. Considering the entire record in this case, and the extent of the testimony given by Mr. Hill and Mr. Kessle, we hold that Hahn has failed to prove as a matter of law that the tire was defective at the time of sale.

The judgment of the trial court is affirmed.